# EXHIBIT D

**STATE OF FLORIDA UNIFORM COMMERCIAL CODE FINANCING STATEMENT FORM**

Florida Secured Transaction Registry

# FILED

2024 Aug 01 05:45 PM

********* 202401965988 *********

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**
NOAH ORNSTEIN; 6463381620

**B. Email** NOAH@JAYARAMLAW.COM

**C. SEND ACKNOWLEDGEMENT TO:**
Name
Address
Address
City/State/Zip

**1. DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

| 1.a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| GOLDENBERRY FARMS, LLC | | | |
| 1.b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1.c MAILING ADDRESS Line One | | | |
| 1330 WEST AVENUE | This space not available. | | |
| MAILING ADDRESS Line Two | CITY | STATE / POSTAL CODE / COUNTRY | |
| | MIAMI BEACH | FL / 33139 / USA | |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (2a OR 2b) - Do Not Abbreviate or Combine Names

| 2.a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2.b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2.c MAILING ADDRESS Line One | This space not available. | | |
| MAILING ADDRESS Line Two | CITY | STATE / POSTAL CODE / COUNTRY | |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY (3a OR 3b)

| 3.a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| JAYARAM PLLC | | | |
| 3.b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3.c MAILING ADDRESS Line One | | | |
| 54 W. 21ST STREET | This space not available. | | |
| MAILING ADDRESS Line Two | CITY | STATE / POSTAL CODE / COUNTRY | |
| SUITE 801 | NEW YORK | NY / 10010 / USA | |

**4. This FINANCING STATEMENT covers the following collateral:**
ALL OF DEBTOR'S PROPERTY, NOW OWNED OR HEREAFTER ACQUIRED, INCLUDING WITHOUT LIMITATION, ALL ACCOUNTS, CHATTEL PAPER, COMMERCIAL TORT CLAIMS, DEPOSIT ACCOUNTS, DOCUMENTS, EQUIPMENT, GENERAL INTANGIBLES (INCLUDING INTELLECTUAL PROPERTY, PATENTS, COPYRIGHTS, TRADEMARKS, AND GOODWILL), GOODS, FIXTURES, INSTRUMENTS, INVENTORY, FINANCIAL ASSETS, DOMAIN NAMES, INVESTMENT PROPERTY, LETTER OF CREDIT RIGHTS, MONEY, AND ALL OF DEBTOR'S BOOKS AND RECORDS WITH RESPECT TO ANY OF THE FOREGOING, AND THE COMPUTERS AND EQUIPMENT CONTAINING SAID BOOKS AND RECORDS; AND ALL PRODUCTS AND PROCEEDS THEREOF, AS DEFINED IN THE AGREEMENT AND THE UNIFORM COMMERCIAL CODE, AS IN EFFECT FROM TIME TO TIME IN THE STATE OF FLORIDA.

**5. ALTERNATE DESIGNATION (if applicable)**   ☐ LESSEE/LESSOR   ☐ CONSIGNEE/CONSIGNOR   ☐ BAILEE/BAILOR   ☐ AG LIEN   ☐ NON-UCC FILING   ☐ SELLER/BUYER

**6. Florida DOCUMENTARY STAMP TAX** – YOU ARE REQUIRED TO CHECK EXACTLY ONE BOX
☒ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.
☐ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**

STANDARD FORM - FORM UCC-1 (REV.05/2013)    Filing Office Copy    Approved by the Secretary of State, State of Florida

## SECURED LENDING AGREEMENT

**THIS SECURED LENDING AGREEMENT** (this "Agreement") is made effective as of June 12, 2024, by and between **JAYARAM PLLC**, a New York professional limited liability company ("Lender"), and **GOLDENBERRY FARMS, LLC**, a Florida limited liability company, on behalf of itself and its affiliates and subsidiaries (collectively, "Borrower").

## RECITALS:

**WHEREAS**, Borrower and Lender entered into that certain Engagement Letter dated as of March 26, 2024 pursuant to which Lender agreed to provide legal services to Borrower (the "Engagement Letter") and Borrower is in default of payments under the Engagement Letter; and

**WHEREAS**, Borrower has an outstanding balance amount of SIXTY-SIX THOUSAND SIX HUNDRED FIVE DOLLARS AND TWO CENTS ($66,605.02) as of June 12, 2024 (the "Initial Balance") due to Lender under the Engagement Letter, which amount may be increased from time to time pursuant to Section 1.1 herein and to include any interest and/or default interest described in Section 1.2 (the "Total Balance").

**NOW, THEREFORE**, in consideration of the recitals, premises and the mutual agreements contained herein, and other good consideration, the sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

## ARTICLE 1. THE LENDING

1.1    Open Balance. Borrower hereby promises to pay by wire transfer the Total Balance upon the terms and conditions set forth herein. The Total Balance shall initially be equal to the Initial Balance. The Total Balance shall increase automatically from time to time in the amount of the legal services Lender provides to Borrower, as measured by time and materials in accordance with the Engagement Letter, which Lender may track (for informational purposes only) on the "Schedule of Borrowings and Repayments," attached as Exhibit A and incorporated herein.

1.2    Interest; Default Interest. Borrower shall pay a simple interest of eight percent (8%) per annum to Lender on the aggregate unpaid principal amount hereunder from July 1, 2024 until the Total Balance is paid or shall become due and payable (whether at the stated maturity or by acceleration). Upon the occurrence of an Event of Default (as defined herein) and during the continuation thereof, the outstanding principal balance of the amounts advanced pursuant to this Agreement shall, in Lender's sole discretion and without prior notice to Borrower, bear interest at the rate of ten percent (10%) per annum, and shall continue at such rate until the outstanding principal amount is paid and all of Borrower's other obligations to Lender hereunder have been fully paid and discharged.

1.3    Maturity. The Total Balance shall be repaid by Borrower to Lender on the earlier of (i) August 31, 2024, (ii) upon a Qualified Financing, or (iii) as a condition to execution of that certain Confidential Settlement Agreement between Borrower and Seasons Farm Fresh, Inc. (the "Maturity Date"). For purposes of this Agreement, "Qualified Financing" means the closing of the sale of shares of Borrower's equity securities to investors or Borrower's completion of one or a series of debt or asset financings.

1.4    Grant of Security Interest. To secure the Borrower's payment and performance under this Agreement, Borrower hereby grants Lender a continuing first security interest in the Collateral (as defined below). Borrower authorizes Lender to file one or more financing statements to perfect its security interest, and Borrower will take such actions at Borrower's own expense as Lender deems reasonably appropriate from time to time to perfect or continue the security interest granted hereunder. Borrower shall from time to time execute and deliver to Lender, at the request of Lender, all financing statements and other documents that lender may reasonably request, in form satisfactory to Lender, to perfect and continue the perfection of Lender's security interests in the Collateral and in order to fully consummate all of the transactions contemplated hereunder, including any account control agreements with respect to Borrower's operating, depository or investment accounts, in form and substance satisfactory to Lender.

"Collateral" means all of Borrower's property, now owned or hereafter acquired, including without limitation, all accounts, chattel paper, commercial tort claims, deposit accounts, documents, equipment, general intangibles (including intellectual property, patents, copyrights, trademarks, and goodwill), goods, fixtures, instruments, inventory, financial assets, domain names, investment property, letter of credit rights, money, and all of Borrower's books and records with respect to any of the foregoing, and the computers and equipment containing said books and records; and all products and proceeds thereof, as defined in this Agreement and the Uniform Commercial Code, as in effect from time to time in the state of Florida.

1.5  Seniority. Borrower agrees that Lender's interests hereunder are now and shall remain senior to any other subsequent debt of Borrower. Where Borrower seeks to enter into any debt or equity financing arrangement during the term of this Agreement, then Borrower's obligations hereunder shall accelerate and all related sums due shall immediately become due and payable in their entirety, provided however, at Lender's sole option, Borrower may be permitted alternate repayment terms. Lender shall not unreasonably withhold its consent from any subordination requests reasonably made by Borrower.

1.6  Application of Payments. Unless a payment is made by Borrower and received at a time when no Event of Default exists and is earmarked for a specific purpose the general rule for application of payments to the obligations shall call for application: (i) first, to accrued expense then due under this Agreement; and (ii) second, to any amount of borrowing outstanding hereunder.

1.7  Progress Payments. Borrower shall make weekly payments of TWO THOUSAND FIVE HUNDRED DOLLARS ($2,500) no later than Friday of each week commencing on the first full week following the execution of this Agreement (collectively, the "Progress Payments") via wire transfer to Lender until the Total Balance is paid or shall become due and payable (whether at the stated maturity or by acceleration). Each Progress Payment shall be applied to any amount of borrowing outstanding hereunder.

1.8  Optional Prepayment. Subject to a five (5) day prior written notice, Borrower may elect to prepay the entire Total Balance outstanding or any part of it without any prepayment fee.

## ARTICLE 2. REPRESENTATIONS, WARRANTIES AND COVENANTS OF BORROWER

2.1  Authority. Borrower is a company in good standing and has the full power and legal authority to conduct its business and to make, deliver and perform this Agreement. Borrower has taken all necessary actions to authorize the execution, delivery and performance of this Agreement, and the borrowing on the terms and conditions of this Agreement. No consent or authorization of, filing with, notice to or other similar act by or in respect of, any governmental authority or any other person (including persons who are beneficiaries of obligations of Borrower) is required to be obtained or made by or on behalf of Borrower in connection with the execution, delivery, performance, validity or enforceability of this Agreement. This Agreement has been submitted to, ratified and approved by the Borrower in the manner required by law.
Full

2.2  Effectiveness. This Agreement shall constitute the legal, valid and binding obligation of Borrower, enforceable against Borrower in accordance with its terms except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting creditors' rights generally and except as enforceability may be subject to general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

2.3  No Legal or Contractual Bar. This borrowing and the use of proceeds: (a) do not and will not violate any requirement of law or obligation of Borrower or permit the acceleration of any obligation of Borrower pursuant to any such obligation; and (b) do not and will not result in, or require, the creation of imposition of any lien on any of Borrower's properties or revenues pursuant to any such requirement of law or obligation other than the security interest granted to the Lender in the Collateral as set forth in this Agreement.

2.4  Waiver. Borrower has waived any potential conflict of interest that could otherwise ever be asserted against Lender arising out of matters relating to this Agreement.

2.5  Information. To the best of its knowledge upon reasonable review, Borrower confirms that: (a) all information and written materials which Borrower has provided or will provide to Lender in connection herewith are accurate in all

material respects; and (b) Borrower has all the necessary authority to disclose, provide copies and authorize the use of such information and written materials to Lender. Lender is hereby authorized by Borrower to use such information and written materials for its evaluation of the borrowings hereunder by its officers, directors, employees, agents and representatives for internal assessment purposes.

## ARTICLE 3. CONDITIONS OF LENDING

3.1     Representations and Warranties. Each of the representations and warranties made by each party to the other pursuant to this Agreement (or in any amendment, modification or supplement hereto or thereto) shall, except to the extent that they relate to a particular date, be true and correct in all material respects on and as of such date as if made on and as of such date.

3.2     Compliance. Borrower will maintain and operate the business in accordance with all applicable laws, regulations, industry and insurance requirements, in each case, in all material respects. Borrower shall obtain and maintain such authorizations, licenses, permits and other governmental or regulatory agency approvals as are required for the performance of this Agreement.

## ARTICLE 4. EVENTS OF DEFAULT AND REMEDIES

4.1     Event of Default. An "Event of Default" shall mean any of the events specified herein; provided that any requirement for the giving of notice, the lapse of time, or both, or any other condition, has been satisfied. The following are Events of Default under this Agreement:

(a)     Borrower shall fail to pay: (i) any amount of principal or interest payable hereunder when due in accordance with the terms hereof or otherwise under the Engagement Letter, including the Progress Payments, or (ii) any third-party charges and fees payable under the Engagement Letter; or

(b)     Borrower shall default in the observance or performance of any other covenant or agreement contained in this Agreement and such default continues for five (5) days after the date that Lender has given written notice to Borrower specifying such default and requiring that it be remedied; or

(c)     Borrower shall (i) commence any case, proceeding or other action (A) under any existing or future law of any jurisdiction, domestic or foreign, relating to bankruptcy, insolvency, reorganization or relief of debtors, seeking to have an order for relief entered with respect to it, or seeking to adjudicate it a bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, winding-up, liquidation, dissolution, composition or other relief with respect to it or its debts, (B) seeking appointment of a receiver, trustee, custodian, conservator or other similar official for it or for all or any substantial part of its assets, or Borrower shall make a general assignment for the benefit of its creditors, or (C) cease doing business in the ordinary course; or (ii) there shall be commenced against Borrower any case, proceeding or other action or a nature referred to in clause (i) above which (A) results in the entry of an order for relief or any such adjudication or appointment or (B) remains undismissed, undischarged, unstayed or unbonded for a period of sixty (60) days; or (iii) there shall be commenced against Borrower any case, proceeding or other action seeking issuance of a warrant of attachment, execution or similar process against all or any substantial part of its assets which results in the entry of an order for such relief which shall not have been vacated, discharged, stayed or bonded pending appeal within sixty (60) days from the entry thereof; or (iv) Borrower shall take any corporate action in furtherance of, or indicating its consent to, approval of or acquiescence in any of the acts set forth in clause (i), (ii), or (iii) above; or (v) Borrower shall fail to comply with all applicable federal or state securities laws, rules or regulations, or exchange rules, or generally be unable to, or shall admit in writing its general inability to, pay its debts as they become due; or

(d)     Any representation or warranty made by Borrower under this Agreement shall be false or incorrect in any material respect on the date such representation or warranty was made.

4.2     Remedies. From and after the occurrence of an Event of Default:

(a) Lender may, at its sole option, declare the Total Balance due by Borrower hereunder to be immediately due and payable without presentment, demand, protest or notice of any kind, all of which are expressly waived, anything in this Agreement to the contrary notwithstanding, and all amounts hereunder shall then be immediately due and payable.

(b) With respect to the Collateral, Lender may sell the Collateral at either a public or private sale, or both, by way of one or more contracts or transaction, for cash or on terms, in such matter and at such places (including Borrower's premises) as Lender determines is commercially reasonable. It is not necessary that the Collateral be present at any such sale. Lender shall give notice of the disposition of the Collateral in writing of the time and place of public sale, or, if the sale is a private sale or some other disposition other than a public sale is to be made of the Collateral, the time on or after which the private sale or other disposition is to be made.

4.3 Remedies Not Exclusive. The remedies conferred upon or reserved to Lender are intended to be in addition to, and not in limitation of, any other remedy or remedies available to Lender.

## ARTICLE 5.
## MISCELLANEOUS

5.1 Amendments. This Agreement and any terms hereof may not be amended, supplemented or modified except pursuant to a writing signed by both Lender and Borrower.

5.2 Notices. All notices, requests and demands to or upon the respective parties hereto be effective shall be in writing (including by e-mail) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when delivered: (i) by hand, upon receipt or (ii) three (3) days after being deposited in the mail, postage prepaid, or (ii) in the case of delivery by a nationally recognized overnight courier, when received, in each case addressed to such addresses as may be hereafter notified by the respective parties hereto.

5.3 Successors and Assigns. Neither party may assign its rights or obligations under this Agreement without the consent of the other party, such consent not to be unreasonably withheld. This Agreement shall be binding upon and inure to the benefit of Borrower and Lender and their respective successors and permitted assigns.

5.4 Severability. Any provision of this Agreement that is prohibited or unenforceable shall not invalidate or render enforceable such provision in any other jurisdiction.

5.5 Governing Law. The validity, interpretation, construction and performance of this Agreement, and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the state of New York, without giving effect to principles of conflicts of law. For purposes of litigating any dispute that may arise directly or indirectly from this Agreement, the parties hereby submit and consent to the exclusive jurisdiction of the state of New York and agree that any such litigation shall be conducted only in the courts of New York, or the federal courts of the United States located in New York and no other courts.

5.6 Continuing Assurances. Borrower and Lender shall, whenever and as often as reasonably requested to do so by the other party, execute, acknowledge and deliver or cause to be executed, acknowledged or delivered, any and all agreements and instruments as may be necessary, expedient or proper to carry out the intent and purposes of this Agreement, providing that the requesting party shall bear the cost and expense of such further agreements or documents (except that the parties shall bear their respective attorneys' fees and costs).

[*Signature page follows*]

**IN WITNESS WHEREOF**, the parties hereto have caused this Secured Lending Agreement to be duly executed and delivered on their behalf as of the date first above written.

Borrower

**GOLDENBERRY FARMS, LLC**, on behalf of itself and its affiliates and subsidiaries

By: *Christopher Palumbo* —952F79CE95CA4C8...
Name: Christopher Palumbo
Title: Acting Director

Lender

**JAYARAM PLLC**

By: _____
Name: _____
Title: _____

# EXHIBIT A

## SCHEDULE OF BORROWINGS AND REPAYMENTS

Pursuant to that certain Secured Lending Agreement dated June 12, 2024, by and between Jayaram PLLC, as Lender, and Goldenberry Farms, LLC, on behalf of itself and its affiliates and subsidiaries, collectively as Borrower, Lender documents the following borrowings:

| Date of Borrowing | Amount Borrowed | Date of Repayment | Repayment Amount |
|---|---|---|---|
| June 12, 2024 | $66,605.02 | | |
| | | | |
| | | | |
| | | | |